1

2

3

4

5                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF WASHINGTON
6

7  ELIZABETH JENKINS,           )
                                )  No. CV-09-0294-CI
8           Plaintiff,          )
                                )  ORDER GRANTING PLAINTIFF'S
9  v.                           )  MOTION FOR SUMMARY JUDGMENT
                                )  AND DENYING DEFENDANT'S
10 MICHAEL J. ASTRUE, Commissioner )  MOTION FOR SUMMARY JUDGMENT
   of Social Security,          )
11                              )
            Defendant.          )
12 _____

13       BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct.

14 Rec. 12, 15.)   Attorney Lora Lee Stover represents Plaintiff;

15 Special Assistant United States Attorney Leisa A. Wolf represents

16 Defendant.   The parties have consented to proceed before a

17 magistrate judge. (Ct. Rec. 6.) After reviewing the administrative

18 record and briefs filed by the parties, the court **GRANTS** Plaintiff's

19 Motion for Summary Judgment and remands the matter to the

20 Commissioner for additional proceedings pursuant to 42 U.S.C. §

21 405(g).

22                            **JURISDICTION**

23       On July 2, 2007, Plaintiff filed for Supplemental Security

24 Income benefits (SSI) and disability insurance benefits (DIB). (Tr.

25 155, 158.)  She alleged disability due to hepatitis C, depression,

26 acid reflux, allergies, asthma, irritable bowel syndrome (IBS) and

27 bi-lateral carpal tunnel syndrome. (Tr. 177.)  She alleged an onset

28 date of December 31, 2004. (*Id.*)  Benefits were denied initially

1  and on reconsideration. (Tr. 89, 90.) Plaintiff requested a

2  hearing before an administrative law judge (ALJ), which was held

3  before ALJ R. J. Payne on February 3, 2009; a supplemental hearing

4  was held on May 5, 2009. (Tr. 33-86.) Plaintiff, who was

5  represented by counsel, and medical experts David Rullman, M.D.,

6  and Ronald Klein, Ph.D., testified. (*Id*.) The ALJ denied benefits

7  and the Appeals Council denied review. (Tr. 1-5, 12-32.) The

8  instant matter is before this court pursuant to 42 U.S.C. § 405(g).

9                         **STATEMENT OF THE CASE**

10     The facts of the case are set forth in detail in the transcript

11  of proceedings, and are briefly summarized here. Plaintiff was 38

12  years old on her alleged onset date and had an 11th grade education;

13  she did not have a high-school equivalency degree. (Tr. 182.) She

14  had vocational training as a food handler, a cashier/checker and

15  care giver. (*Id*.) She had limited work experience as a temporary

16  laborer, in home care giver, retail cashier, and food server. (Tr.

17  178, 72-75.) Plaintiff was unmarried and lived with her mother in

18  a two-story duplex. She reported she had no relationship with her

19  three children. (Tr. 290.) She stated her mother did most of the

20  household chores, although she did her own laundry once a month and

21  her mother would grocery shop with her three times a month.

22  Plaintiff also stated she slept 20 hours day, with short periods of

23  wakefulness during which she ate or watched television. (Tr. 66-

24  68.) She reported asthma, back and wrist pain, IBS, extreme fatigue

25  and side effects from medication prevented her from working or doing

26  other activities. (Tr. 77.)

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

**ADMINISTRATIVE DECISION**

ALJ Payne found Plaintiff met the insured status requirements through March 31, 2004. (Tr. 17.) At step one, he found Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (*Id*.) At step two he found she had severe impairments of hepatitis C NOS; bilateral carpal tunnel syndrome; morbid obesity; and somatoform disorder, but they did not meet or medically equal an impairment listed in Appendix I, Subpart P, Regulations No. 4 (Listings). (Tr. 17, 21.) At step four, considering Plaintiff's testimony and the medical evidence, he found Plaintiff had a residual functional capacity (RFC) to perform a full range of medium work, as defined by the Regulations. (Tr. 22, 26.) He concluded Plaintiff's allegations of disabling symptoms were not credible to the extent they were inconsistent with the RFC findings. (Tr. 22-23.) He then found her past jobs were not performed at substantial gainful activity levels; therefore, there was no past relevant work for her to perform. (Tr. 26.) At step five, the ALJ found Plaintiff's limitations had "little or no effect on the occupational base of unskilled light work." (Tr. 26.) Referencing the Medical-Vocational Guidelines and using Rule 203.26 as a framework for his findings, the ALJ took judicial notice of historical and routine vocational expert testimony that limitations similar to Plaintiff's "would not significantly erode the job base at the sedentary job levels." (*Id*.) Based on this reasoning, he concluded "there are [sic] still a wide range of sedentary, light, and medium exertional level jobs" that Plaintiff was capable of performing. (Tr. 26-27.) He found Plaintiff had not been under a disability, as defined by

1  the Social Security Act, from her alleged onset date through the

2  date of his decision.    (Tr. 27.)

3                          **STANDARD OF REVIEW**

4       In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

5  court set out the standard of review:

6           A district court's order upholding the Commissioner's
         denial of benefits is reviewed *de novo*. *Harman v. Apfel*,
7        211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the
         Commissioner may be reversed only if it is not supported
8        by substantial evidence or if it is based on legal error.
         *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
9        Substantial evidence is defined as being more than a mere
         scintilla, but less than a preponderance.  *Id.* at 1098.
10       Put another way, substantial evidence is such relevant
         evidence as a reasonable mind might accept as adequate to
11       support a conclusion.  *Richardson v. Perales*, 402 U.S.
         389, 401 (1971).  If the evidence is susceptible to more
12       than one rational interpretation, the court may not
         substitute its judgment for that of the Commissioner.
13       *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
         Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

14

15          The ALJ is responsible for determining credibility,
         resolving conflicts in medical testimony, and resolving
16       ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
         Cir. 1995).  The ALJ's determinations of law are reviewed
17       *de novo*, although deference is owed to a reasonable
         construction of the applicable statutes. *McNatt v. Apfel*,
         201 F.3d 1084, 1087 (9th Cir. 2000).

18

19                        **SEQUENTIAL PROCESS**

20      Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the

21  requirements necessary to establish disability:

22          Under the Social Security Act, individuals who are
         "under a disability" are eligible to receive benefits.  42
23       U.S.C. § 423(a)(1)(D).  A "disability" is defined as "any
         medically determinable physical or mental impairment"
24       which prevents one from engaging "in any substantial
         gainful activity" and is expected to result in death or
25       last "for a continuous period of not less than 12 months."
         42 U.S.C. § 423(d)(1)(A).  Such an impairment must result
26       from "anatomical, physiological, or psychological
         abnormalities which are demonstrable by medically
27       acceptable clinical and laboratory diagnostic techniques."
         42 U.S.C. § 423(d)(3).  The Act also provides that a

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (*citing* 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**ISSUES**

The question is whether the ALJ's decision is supported by

substantial evidence and free of legal error.  Plaintiff argues the ALJ erred when he (1) disregarded the opinions of treating and examining physicians regarding her physical conditions; (2) discounted her testimony; and (3) assessed her RFC.  She also contends the ALJ erred by failing to order a consultative examination by a gastroenterologist.  (Ct. Rec. 13 at 9.)

**DISCUSSION**

**A.   Medical Opinions**

Plaintiff argues the ALJ ignored the opinions of her treating physician, James Chavez-Muramatsu, D.O., that she was limited to sedentary work, and had postural limitations that would affect her ability to perform work tasks.  She contends reviewing agency physician Howard Platter, M.D., and hearing medical expert David Rullman, M.D., also found Plaintiff had limitations in handling and fingering, but the ALJ failed to included them in the final RFC determination.  (Ct. Rec 13 at 13; Tr. 352-257; 337, 59-61.)

In a disability proceeding, it is the role of the ALJ to resolve conflicts in medical evidence.  A treating physician's opinion is given special weight because of his or her familiarity with the claimant and her physical condition.  *See Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989).  If the treating physician's opinion is not contradicted, it can be rejected only with "clear and convincing" reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence.  *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605.

State agency physicians such as Dr. Platter are considered experts in the evaluation of medical issues in Social Security disability claims. Their findings of fact must be treated as expert opinion evidence of a non-examining acceptable medical source by the ALJ, who must give specific, legitimate reasons for rejecting their contradicted opinions. If uncontradicted, the reasoning must be "clear and convincing." 20 C.F.R. §§ 404.1527(f), 416.927(f); *SSR 96-6p*. In addition, the analysis and opinion of a medical expert selected by the ALJ may be helpful in adjudication. Testimony of a medical expert may serve as substantial evidence when supported by and consistent with other evidence in the record. *Andrews,* 53 F.3d at 1041.

To meet his burden, the ALJ can set out a detailed and thorough summary of the facts and conflicting clinical evidence, state his interpretation of the evidence, and make findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is not required to accept the opinion of a treating or examining physician if that opinion is brief, conclusory and inadequately supported by clinical findings. *Id.* Nonetheless, he must explain the weight given probative medical evidence.

Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding the treating physician's opinion. *See Flaten*, 44 F.3d at 1463-64;

1  *Fair*, 885 F.2d at 604.   Even where an ALJ does not specifically
2  state that he rejects a physician's opinions, it is proper for a
3  reviewing court to draw inferences from the ALJ's discussion of the
4  physician's findings and opinion, if inferences are there to be
5  drawn.   *Magallanes*, 881 F.2d at 755.

6      **1.   Treating Physician James Chavez Muramatsu, D.O.**

7      The ALJ specifically referenced Dr. Chavez-Muramatsu's finding
8  that Plaintiff was limited to sedentary work.   (Tr. 25.)   He gave
9  this opinion little weight because it was inconsistent with clinic
10  notes showing mild to moderate pain; range of motion, balance, gait
11  and coordination in tact; normal fine motor skills and no sensory or
12  motor loss.  (*Id.*)    The record  substantially  supports  the  ALJ's
13  interpretation of Dr. Chavez-Muramatsu's clinic notes.   (Tr. 363-
14  71.)    For  example,  it  is  noted  on  review  that  in  July  2008,
15  Plaintiff reported "infrequent" pain, and declined pain medication
16  because it made her sleepy.  (Tr. 363.)  However, later records show
17  she consistently complained of and was being treated conservatively
18  for chronic pain in her wrists and back.  (Tr. 367-71.)   The ALJ
19  reasonably found the pain reported was "mild to moderate."

20      Regarding the restriction to sedentary work, clinic notes do
21  not reflect problems with walking, standing or lifting.   Gait was
22  consistently observed as normal.   The ALJ properly gave more weight
23  to clinic notes than the check box form accompanying the physician's
24  records.   *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).   The
25  ALJ's reasons for not giving Dr. Chavez-Muramatsu's sedentary level
26  opinion controlling weight are legally sufficient.  *See SSR* 96-2p.

27

28

**2.    Non-examining physicians Howard Platter, M.D., David Rullman, M.D., and Ronald Klein**

The record shows agency reviewing physician Dr. Platter opined Plaintiff had non-exertional limitations in her ability to finger and handle due to bi-lateral carpal tunnel impairment.  (Tr. 337.) Although the ALJ found the RFC determination by Dr. Platter was supported by the totality of the evidence, and appears to have given it significant weight, he did not include non-exertional limitations identified by Dr. Platter in the final RFC significant determination.   The ALJ found "claimant's testimony [is not] entirely credible and since many of his [sic] complaints to his [sic] doctors cannot be objectified, medical opinions not based on objective medical findings were appropriately discounted for purposes of this determination." (Tr. 25.)   However, the non-exertional limitations identified by Dr. Platter are supported by reports from examining physicians Larry Lamb, M.D., in November 2007, (Tr. 398-99), and Cynthia Hahn, M.D., in March 2009.  (Tr. 412-14.) The ALJ's reasoning is neither "clear and convincing" nor sufficiently specific and legitimate to reject the fingering and handling limitations assessed by Dr. Platter.

Likewise, at the hearing, medical expert Dr. Rullman testified Plaintiff would have moderation limitations in her ability to finger and possibly handle due to carpal tunnel symptoms.  He noted obesity may limit Plaintiff's work abilities. (Tr. 59-62.)  The ALJ did not reject this opinion and did not include it as a non-exertional limitation in the RFC determination. *De novo* review also reveals the ALJ neither accepted nor rejected medical expert testimony from Ronald Klein, Ph.D.  As found by the ALJ, Dr. Klein testified

objective tests indicate Plaintiff would have moderate limitations in her ability to maintain attention and concentration for extended periods, and she may be distracted occasionally by somatic symptoms. (Tr. 20, 395-96.)  These unrejected non-exertional limitations were not included in the Commissioner's final RFC determination.

Although the ALJ is responsible for resolving conflicts in medical evidence, he must explain with specificity the weight given to opinions of acceptable medical sources.  20 C.F.R. §§ 404.1527, 416.927.  Because the ALJ failed to evaluate with specificity the opinions of Drs. Platter, Rullman, and Klein, the Commissioner's decision is not free of legal error and cannot be affirmed. Further, these errors cannot be considered harmless.  An error is harmless when the correction of that error would not alter the result.  *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995).  Here, the ALJ neither rejected non-exertional limitations assessed nor included them in the final RFC determination.  If the unrejected non-exertional limitations are credited and included in the RFC assessment, the use of the Medical-Vocational Guidelines at step five constitutes legal error requiring remand.

**B.   Step Five - Use of the Medical-Vocational Guidelines**

At step five, the burden shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).  The Medical-Vocational Guidelines (Grids) is a matrix system developed by the Commissioner for resolving cases that involve substantially uniform functional

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

capacities. *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 578 (9th cir. 1988). The Grids were adopted to improve the efficiency of disability benefits proceedings. *Id.* Their use was upheld as valid in *Heckler v. Campbell,* 461 U.S. 458 (1983). However, the Grids are an administrative tool, and there are strict limits on when the Commissioner may rely on them; the exclusive use of the Grids is appropriate only where "a claimant's functional limitations fall into a standardized pattern accurately and completely described by the Grids." *Tackett,* 180 F.3d at 1103 (*citing Desrosiers*, 846 F.2d at 577). Where the Grids do not accurately describe a claimant's condition, the Grids are used as a "framework for decision-making," and vocational expert testimony is required to determine if there are jobs in that national economy that the individual claimant can perform. *See Polny v. Bowen*, 864 F.2d 661, 663-64 (9th Cir. 1988); *SSR* 83-12.

Where the Grids are not determinative, the Commissioner has the burden of showing specific jobs within the claimant's capabilities. *See Kail,* 722 F.2d at 1498. When a claimant cannot perform a full range of work, her particular limitations, including pain, and their impact on the ability to perform work activities must be evaluated individually. *SSR* 83-12. A step finding based on unsupported speculation regarding other work in the national economy is insufficient to meet the Commissioner's burden at step five. *Lester,* 81 F.3d at 832.

Here, at step five, the ALJ took "administrative notice" of historical "expert vocational analysis." (Tr. 26.) Vocational expert testimony is not a proper subject to be administratively or

judicially noticed, is inadequate to satisfy a step five requirement for vocational expert testimony, and is contrary to the Commissioner's policy. *SSR* 83-10; *SSR* 83-12. The ALJ's failure to call a vocational expert in this case is reversible error. *Tackett*, 180 F.3d at 1102-03.

As explained above, even where substantial evidence supports an ALJ's decision, the decision must be set aside if proper legal standards were not applied. *Brawner*, 839 F.2d at 433. Here, without vocational expert testimony (or legally sufficient rejection of non-exertional limitations assessed), the record is not clear as Plaintiff's eligibility for disability benefits. Therefore, remand for additional proceedings is warranted. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990). The court notes, however, that the identified non-exertional limitations might not preclude the ability to perform work activities; therefore, Plaintiff might not succeed in proving she is disabled as defined by the Social Security Act. *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).

On remand, additional testimony may be taken, and Plaintiff may submit additional relevant evidence. The ALJ will conduct a new sequential evaluation, make new credibility findings, give legally sufficient reasons for the rejection of probative evidence from acceptable medical sources, and make new RFC findings, taking into consideration the effects of pain and obesity. *See SSR* 02-1p. At step five, vocational expert testimony should be obtained to evaluate Plaintiff's exertional and non-exertional limitations in combination and their effect on her ability to perform other work in the national economy. Accordingly,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

1

**IT IS ORDERED:**

2      1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 12)** is

3  **GRANTED**;

4      2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 15)** is

5  **DENIED;**

6      3.   Application for attorney fees may be filed by separate

7  motion.

8      The District Court Executive is directed to file this Order and

9  provide a copy to counsel for Plaintiff and Defendant. Judgment

10  shall be entered for **PLAINTIFF,** and the file shall be **CLOSED**.

11      DATED November 18, 2010.

12
                    S/ CYNTHIA IMBROGNO
13                UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13